UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LINDA CRISTINA ROBICHEAUX, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. A15-CV-0417SS |
| v. § | |
| § | |
| CENTENE CORPORATION; § | JURY TRIAL DEMAND |
| CENTENE COMPANY OF TEXAS, LP; § | |
| AND SUPERIOR HEALTH PLAN, INC. § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.
NATURE OF THE ACTION**

1.	This lawsuit is a civil action under the Americans with Disabilities Act, as amended ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Plaintiff, who was adversely affected by such practices.

**II.
JURISDICTION AND VENUE**

2.	Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331.

3.	This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially in Travis County, Texas.

**III.
PARTIES**

4.	Plaintiff, Linda Cristina Robicheaux ("Robicheaux" or "Plaintiff"), is a resident of

Lago Vista, Texas.

5. Defendant Centene Corporation may be served with process by serving its Registered Agent at the following address: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

6. Defendant Centene Company of Texas, LP, may be served with process by serving its Registered Agent at the following address: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

7. Defendant Superior Health Plan, Inc., may be served with process by serving its Registered Agent at the following address: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## IV.
## STATEMENT OF FACTS

8. Prior to being employed by Defendants, Plaintiff, Linda Robicheaux was diagnosed with aplastic anemia and pulmonary fibrosis. These conditions cause Ms. Robicheaux to be substantially limited in several major life activities, including breathing, walking, lifting, caring for herself, and eating.

9. Defendants hired Ms. Robicheaux in September of 2013 as a Medical Case Manager II. Mrs. Robicheaux is a registered nurse certified by the State of Texas. Upon her acceptance of the position, Mrs. Robicheaux was advised that after her 90-day probation period, she would be allowed to work from home. Ms. Robicheaux performed her job satisfactorily, and based on performance, received a merit increase on April 8, 2014.

10. In February of 2014, Trimbuilt Construction ("Trimbuilt") at 12800 N. Lamar Blvd, Austin, Texas 78753, began construction in Plaintiff's workplace. Neither Trimbuilt, nor the

building management team or a designated representative placed protective plastic around doorways, or fans which would blow or move the contaminated airways outside of the office environment away from the employees in the designated workspace. Trimbuilt's workers, however, did wear face masks and protective gear.

11. Shortly after the construction began, Ms. Robicheux and other employees began noticing that yellow particulate was dropping onto the desktops of Centene employees from the air and ventilation ducts. One of Ms. Robicheaux's co-workers, Shalla Newton, pointed out to Kelly Lane, Ms. Robicheaux's manager, that the particulate was covering the workspace, and yet nothing was done to stop the contamination.

12. At the time that the construction was taking place, Ms. Robicheaux was an established patient with a hematologist, Dr. Bali Netaji. She had also set up a baseline with her pulmonologist, Dr. Laura Gilbey, back in 2013, and was also seeing specialists at NIH (National Institute for Health) on a yearly basis.

13. Shortly after the construction on the Centene building began, Mrs. Robicheaux was forced to make an earlier appointment on March 6, 2014, with Dr. Gilbey due to worsening breathing complications. She was advised at that time by her physician to work from home to avoid the environmental issues present in her workplace that appeared to be emanating from Trimbuilt's work activities.

14. When she returned from the doctor visit on March 6, 2014, Mrs. Robicheaux presented her paperwork from the physician advising her to work from home to her direct supervisor, Kelli Lane. Ms. Lane refused both Ms. Robicheaux's request to work from home and the paperwork from Mrs. Robicheaux's physician advising Plaintiff to make said request. This paperwork included a statement from Dr. Gilbey advising that Plaintiff had "upper and lower airway inflammation, likely

from respiratory virus and/or environmental allergens… Avoidance of the dust/fumes related to construction in her workplace would be quite helpful; she has the ability to work from home."

15. On March 20, 2014, Ms. Robicheaux followed up with Dr. Gilbey, who again advised her to work from home until she was in an improved state to work in the presence of the ongoing construction activities. Mrs. Robicheaux returned to work the following day where she once again made the request to Ms. Lane for allowance to work from home and offered paperwork from Dr. Gilbey as proof of such advisement. Once again, Ms. Lane declined to grant Ms. Robicheaux's request.

16. After Ms. Lane again refused her request for the accommodation of working from home, Mrs. Robicheaux then asked Ms. Lane on March 21, 2014, to move her cubicle away from the construction activities. Ms. Lane did not respond to this request.

17. Two days later, on March 23, 2014, Ms. Robicheaux made another request to Ms. Lane to move her cubicle in an effort to avoid the construction dust emanating from the stairwell up to the area of her cubicle. Again Ms. Lane did not respond to this request.

18. In April of 2014, Ms. Robicheaux was advised by Ms. Lane to leave out any mention of health issues related to her work environment in the building on her Career Development Plan. By that time, however, Ms. Robicheaux was experiencing breathing problems and other physical problems related to her breathing that were clearly interfering with her work.

19. On May 14, 2014, Mrs. Robicheaux experienced additional respiratory distress, including shortness of breath and coughing. She followed up with her physician, Dr. Gilbey, about it, and when she returned to work from the appointment requested again that she be allowed the reasonable accommodation of working from home because of her respiratory complications.

20. Plaintiff returned to Dr. Gilbey on May 19, 2014, because of increased shortness of

breath and difficulty breathing. Dr. Gilbey increased her medication to alleviate her respiratory distress. The following day, May 20, 2014, Ms. Robicheaux made another request to Ms. Lane, to work from home to allow her lungs the time to properly heal before returning to the workplace. Ms. Robicheaux also made this request to Medical Case Managing Director, Kevin Calvert, on May 20, 2014. However, neither Mr. Calvert nor Ms. Lane ever responded to this request.

21. On May 30th, Ms. Robicheaux again went to see Dr. Gilbey because her respiratory problems were continued to worsen. Dr. Gilbey prescribed oxygen for Ms. Robicheaux to use at night. This was the first time in her life that Ms. Robicheaux had ever been placed on oxygen therapy at home.

22. On June 5, 2014, Ms. Robicheaux began feeling extremely ill and again asked her supervisor, Kelli Lane, for the reasonable accommodation of working from home because of her medical conditions and the construction going on in the office. Again, Ms. Lane denied her request. Later that afternoon, Mrs. Robicheaux was admitted to the hospital, where she stayed overnight to receive oxygen and other intensive respiratory treatments, and was placed on continuous oxygen for home use. This was the last day Ms. Robicheaux was physically in the workplace at Centene.

23. On June 12, 2014, Plaintiff called Liberty Mutual to file short-term disability Claim Number 3344724. On June 14, 2014, Mrs. Robicheaux spoke with Charlie Trad, Centene Human Resources, in regard to filing a worker's compensation claim. Mr. Trad assured Plaintiff she would not risk the loss of her job if filing such a claim. Two days later, on June 16, 2014, Plaintiff was locked out of computer access to Centene. The following day, Plaintiff sent an email to Corporate Human Resources at Centene outlining the issues she was experiencing.

24. Plaintiff filed Worker's Compensation Claim Number 14269916-AU, and received denial of such claim on July 14, 2014.

25. Ms. Robicheaux's short-term disability claim was approved on July 25, 2014.

26. Plaintiff received an order from her physician, Dr. Netaji, for designation of permanent handicap disability.

27. Mrs. Robicheaux was informed by Centene Human Resources, Charlie Trad, that her employment would terminate effective December 5, 2014, as this was the date short term disability would terminate and when long-term disability would be denied due to "preexisting conditions. Ms. Robicheaux was then terminated on December 5, 2014.

## V.
## CAUSES OF ACTION

### COUNT ONE:
### Denial of Reasonable Accommodation and Discrimination on the Basis of Disability in violation of the ADA and TCHRA

28. Defendants violated by the Americans with Disabilities Act and the Texas Commission on Human Rights Act by refusing to accommodate Plaintiff's disability and by discharging Plaintiff. 42 U.S.C. § 12101 *et seq.;* Texas Labor Code §21.001 *et seq.*

29. Under 42 U.S.C. §12112 and the Texas Labor Code, §21.001 *et seq.*, it is unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's disability or because the employer regards the individual as a person with a disability.

30. Defendants are employers under the ADA and the TCHRA. Each Defendant had more than 15 employees in 20 or more calendar weeks during the year in which the violations complained of in this case occurred, or in the preceding calendar year.

31. Plaintiff was qualified for and could perform the essential functions of her job, with reasonable accommodations. Plaintiff is a qualified individual with a disability, is a qualified

individual with a record of a disability, and was regarded by the Defendants as a person with a disability.

32. Plaintiff was meeting her employer's expectations.

33. Plaintiff was terminated as a direct result of his disability, his record of having a disability, and/or because Defendants regarded Plaintiff as a person with a disability.

34. Defendants violated both the ADA and TCHRA by intentionally refusing to accommodate Plaintiff's disability and by discriminating against Plaintiff because of her disability by terminating Plaintiff's employment.  Plaintiff's disability and/or being regarded as disabled was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment. Plaintiff's disability and/or Defendants' perception of Plaintiff as a person with a disability moved Defendants toward their decision or was a factor that played a part in Defendants' employment decisions as to Plaintiff.

35. Defendants violated the ADA and the TCHRA by failing to reasonably accommodate Ms. Robicheaux's disability.

36. Defendants violated the ADA and the TCHRA by failing to reasonably accommodate Robicheaux's request for additional leave so that she could return to work after recovering from the multiple construction dust inhaling incidents on its premises that caused her respiratory failures and exacerbation of prior illnesses.

37. Defendants violated the ADA and the TCHRA by failing to reasonably accommodate Robicheaux's request to work at home so that she could avoid further inhalation of dust emanating from the construction work in her immediate and surrounding workplace.

38. Defendants violated the ADA and the TCHRA by failing to reasonably accommodate Mrs. Robicheaux's request to make workplace modifications requested by Plaintiff, including

moving her cubicle farther from the construction being done on the offices.

39. Defendants violated the ADA and the TCHRA by failing to engage in the interactive process regarding any of Plaintiff Robicheaux's reasonable accommodation requests.

40. Defendants violated the ADA and the TCHRA by discharging Plaintiff Robicheaux because of her disability.

41. Defendants violated the ADA and the TCHRA by discharging Plaintiff Robicheaux because of her impairment and subsequent respiratory failure. The discharge was due to Defendant regarding Ms. Robicheaux as disabled.

42. The unlawful employment practices complained of herein were committed with malice or with reckless indifference to Mrs. Robicheaux's federally protected rights.

43. Defendants' unlawful practices complained of herein have violated the rights of affected persons protected under the ADA.

44. The unlawful employment practices complained of herein were intentional.

45. The unlawful employment practices complained of herein have caused Ms. Robicheaux, to suffer economic injuries, including but not limited to lost wages, as well as nonpecuniary injuries.

## VI.
## DAMAGES

As a result of Defendants' unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendants' unlawful conduct,

including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## VII.
## COMPENSATORY DAMAGES

Defendants intentionally engaged in an unlawful employment practice by refusing to accommodate Plaintiff's disability, and by discriminating against Plaintiff because of his disability, his record of having a disability, and/or because Defendants regarded Plaintiff as being disabled. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VIII.
## PUNITIVE DAMAGES

The conduct committed by Defendants against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## IX.
## ATTORNEYS' FEES AND EXPERT FEES

A prevailing party may recover reasonable attorneys' and experts' fees. SEE TEX. LAB. CODE §21.259; 42 U.S.C. §2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees.

## X.
## JURY DEMAND

Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

2. The Court award Plaintiff damages as specified above;

3. The Court award Plaintiff reinstatement or, in the alternative, front pay;

4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

THE LAW OFFICES OF KELL A. SIMON
902 East 5th Street
Austin, Texas 78702
(512) 898-9662 Telephone
(512) 368-9144 Facsimile


/s/ Kell A. Simon
Kell A. Simon
State Bar No. 24060888
ATTORNEY FOR PLAINTIFF